UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ATPAC, INC., a California corporation, | NO. CIV. 2:10-294 WBS JFM |
| Plaintiff, | MEMORANDUM AND ORDER RE: |
| v. | MOTION FOR PARTIAL SUMMARY JUDGMENT |
| APTITUDE SOLUTIONS, INC., a Florida corporation, COUNTY OF NEVADA, a California County, and GREGORY J. DIAZ, an individual, | |
| Defendants. | |

----oo0oo----

Plaintiff AtPac, Inc., filed this action against defendants Aptitude Solutions, Inc. ("Aptitude"), County of Nevada, and Gregory J. Diaz alleging breach of contract, misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426-3426.11, and copyright infringement. Aptitude now moves for summary judgment on the misappropriation of trade secrets claim pursuant to

1

1  Federal Rule of Civil Procedure 56(a) on the ground that it is
2  preempted by the copyright infringement claim.

3  I.   Evidentiary Objections

4          "A party may object that the material cited to support
5  or dispute a fact cannot be presented in a form that would be
6  admissible in evidence." Fed. R. Civ. P. 56(c)(2). "[T]o
7  survive summary judgment, a party does not necessarily have to
8  produce evidence in a form that would be admissible at trial, as
9  long as the party satisfies the requirements of Federal Rules of
10 Civil Procedure 56." Fraser v. Goodale, 342 F.3d 1032, 1036-37
11 (9th Cir. 2003) (quoting Block v. City of Los Angeles, 253 F.3d
12 410, 418-19 (9th Cir. 2001)) (internal quotation marks omitted).
13 Even if the non-moving party's evidence is presented in a form
14 that is currently inadmissible, such evidence may be evaluated on
15 a motion for summary judgment so long as the moving party's
16 objections could be cured at trial.  See Burch v. Regents of the
17 Univ. of Cal., 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006).

18         Aptitude has filed numerous evidentiary objections to
19 evidence submitted by plaintiff in opposition to the instant
20 motion.  (Docket Nos. 125-130.)

21         Aptitude argues in particular that certain portions of
22 plaintiff's declarations and exhibits should be excluded from
23 consideration by the "sham affidavit rule." "The general rule in
24 the Ninth Circuit is that a party cannot create an issue of fact
25 by an affidavit contradicting his prior deposition testimony."[1]

26

27         [1]   The sham affidavit rule applies to other types of sworn
28 evidence as well.  See Hambleton Bros. Lumber Co. v. Balkin
   Enters., Inc., 397 F.3d 1217, 1225 (9th Cir. 2005) (corrections

1  Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir.

2  1991).  This is because "[i]f a party who has been examined at

3  length on deposition could raise an issue of fact simply by

4  submitting an affidavit contradicting his own prior testimony,

5  this would greatly diminish the utility of summary judgment as a

6  procedure for screening out sham issues of fact."  Id. (quoting

7  Foster v. Arcata Assocs., Inc., 772 F.2d 1453, 1462 (9th Cir.

8  1985)) (internal quotation marks omitted).

9       The sham affidavit rule may be invoked only if a

10  district court makes "a factual determination that the

11  contradiction was actually a sham" and "the inconsistency between

12  a party's deposition testimony [or interrogatory response] and

13  subsequent affidavit . . . [is] clear and unambiguous."  Van

14  Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009)

15  (internal quotations marks and citations omitted).  Accordingly,

16  "the non-moving party is not precluded from elaborating upon,

17  explaining or clarifying prior testimony elicited by opposing

18  counsel on deposition; minor inconsistencies that result from an

19  honest discrepancy, a mistake, or newly discovered evidence

20  afford no basis for excluding an opposition affidavit."  Messick

21  v. Horizon Indus., Inc., 62 F.3d 1227, 1231 (9th Cir. 1995).

22       Aptitude contends that all references to plaintiff's

23  Supplemental Response to Interrogatories Nos. 1 and 2[2] ought to

24

_____

25  to depositions); School Dist. No. 1J, Multnomah Cnty., Or. v.
   ACandS, Inc., 5 F.3d 1255, 1264 (9th Cir. 1993)
26  (interrogatories).

27     [2]   The specific objections are objections 1 and 2 to the
   Sandblade Declaration (Docket No. 128) and objections 1 to 4 and
28  6 to the Thomas Declaration (Docket No. 125).

1   be striken as shams.  Plaintiff filed supplemental responses to

2   interrogatories regarding its trade secret and copyright claims

3   after the instant motion was filed, providing more information

4   than had previously been given and fully distinguishing for the

5   first time between what it considered to be a trade secret and

6   what it considered to be covered by copyright law.  However,

7   Aptitude has not shown that the supplemental responses are

8   inconsistent with plaintiff's prior testimony, as opposed to

9   merely expanding on it.  The court cannot find that the

10  supplemental responses were a "sham," and thus the court

11  overrules those objections based on that ground.

12          In the interest of brevity, the court will not review

13  the substance or grounds of all the objections here, as the

14  parties are aware of the substance of the objections and the

15  grounds asserted in support of each objection.  For the purposes

16  of this motion, Aptitude's objections 1 to 6 to the Thomas

17  Declaration, objections 1 and 2 to the Sandblade Declaration, and

18  objection 15 to the Long Declaration are sustained pursuant to

19  Federal Rule of Evidence 1002 (best evidence rule).  Aptitude's

20  objection 3 to the Krugle Declaration, objections 4, 10, 14, 18,

21  and 19 to the Sandblade Declaration, and objection 14 to the Long

22  Declaration are sustained on the ground that the evidence

23  contains legal conclusions.  The rest are overruled.

24  II.  Factual and Procedural Background

25          Plaintiff is a software company that develops and

26  licenses computer software, including county clerk-recorder

27  information imaging systems.  (Long Decl. ¶ 2 (Docket No. 106).)

28  These systems are designed to, inter alia, electronically

                                    4

cashier, record, track, and query information that is within the purview of a county clerk-recorder and to store images of relevant documents associated with this information. (Id. ¶ 4.) Plaintiff's clerk-recorder imaging information software is distributed under the mark "CRiis," which stands for "Clerk-Recorder Imaging Information System." (Id. ¶ 3.) Plaintiff has secured two copyright registrations with the United States Copyright Office for its CRiis software. (Thomas Decl. ¶ 14 (Docket No. 99).) To register its copyrights, plaintiff utilized the Copyright Office's special procedure designed to permit computer source code to be registered without destroying its potential trade secret status, wherein only a small fraction of the code is disclosed and yet the whole work of software is registered.[3] (Id.; see Pl.'s Req. for Judicial Notice Ex. A (Docket No. 111).)

In 1999, plaintiff entered into a License Agreement with Nevada County for the CRiis software and related services to help Nevada County electronically maintain, organize, and protect public information. (Long Decl. ¶ 9.) In November of 2008, Diaz, the Clerk-Recorder of Nevada County, notified plaintiff

---

[3]     Plaintiff asks the court to take judicial notice of two documents: a document from the United States Copyright Office entitled "Copyright Registration for Computer Programs" and an indemnification agreement between Aptitude and Nevada County. The court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201, which includes "matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Both of these documents are matters of public record whose authenticity is not disputed, and the court will take judicial notice of them.

1  that Nevada County intended to terminate the License Agreement

2  and obtain the services of Aptitude, one of plaintiff's

3  competitors.  (Id. ¶ 12.)

4       Plaintiff has brought claims for breach of contract

5  against Nevada County and misappropriation of trade secrets and

6  copyright infringement against all defendants arising from

7  defendants' alleged mishandling of the conversion of Nevada

8  County's data from CRiis to Aptitude's software.[4]  (First Am.

9  Compl. (Docket No. 22).)  The items relevant to plaintiff's

10 copyright infringement claim include thousands of computer files

11 that comprise the CRiis software and CRiis graphical user

12 interfaces.  (Thomas Decl. ¶ 2, Ex. A.)  The items relevant to

13 plaintiff's misappropriation of trade secrets claim include, in

14 brief, the CRiis computer source code, the confidential means of

15 accessing the servers housing plaintiff's software package, the

16 CRiis data schema, data files, methods, processes, and

17 functionalities.  (Id. ¶ 3, Ex. A.)

18      Plaintiff takes several steps to maintain the

19 confidentiality of its alleged trade secrets, including requiring

20 its employees to keep information confidential, requiring

21 licensees to keep information confidential and remove its

22 materials upon expiration of a license, providing a notice of its

23 intellectual property and trade secret rights each time licensees

24 use the CRiis software and requiring them to agree to comply with

25 the license requirements, restricting CRiis login accounts,

26

27      [4]   Plaintiff's fourth claim, under the Computer Fraud and
   Abuse Act, 18 U.S.C. § 1030, was dismissed by the court on August
28 4, 2010.  (Docket No. 30.)

1  serving as system administrator of all servers where CRiis

2  software and other trade secrets are kept, restricting access to

3  CRiis source code and data schema to its employees who need it,

4  limiting public search functionality, locating source code behind

5  firewalls, and restricting access to its primary development

6  server.  (Sandblade Decl. ¶ 5 (Docket No. 107).)

7  III. <u>Discussion</u>

8       Summary judgment is proper "if the movant shows that

9  there is no genuine dispute as to any material fact and the

10 movant is entitled to judgment as a matter of law."  Fed. R. Civ.

11 P. 56(a).[5]  A material fact is one that could affect the outcome

12 of the suit, and a genuine issue is one that could permit a

13 reasonable jury to enter a verdict in the non-moving party's

14 favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

15 (1986).

16       The party moving for summary judgment bears the initial

17 burden of establishing the absence of a genuine issue of material

18 fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

19 Alternatively, the moving party can demonstrate that the

20 non-moving party cannot produce evidence to support an essential

21 element upon which it will bear the burden of proof at trial.

22 <u>Id.</u>  Once the moving party meets its initial burden, the burden

23 shifts to the non-moving party to "designate 'specific facts

24 showing that there is a genuine issue for trial.'"  <u>Id.</u> at 324

25 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden, the

26 _____

27      [5]   Federal Rule of Civil Procedure 56 was revised and
   rearranged effective December 1, 2010.  However, as stated in the
   Advisory Committee Notes to the 2010 Amendments to Rule 56,
28 "[t]he standard for granting summary judgment remains unchanged."

1  non-moving party must "do more than simply show that there is
2  some metaphysical doubt as to the material facts." <u>Matsushita</u>
3  <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).
4  "The mere existence of a scintilla of evidence . . . will be
5  insufficient; there must be evidence on which the jury could
6  reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S.
7  at 252.

8          In deciding a summary judgment motion, the court must
9  view the evidence in the light most favorable to the non-moving
10 party and draw all justifiable inferences in its favor.  <u>Id.</u> at
11 255.  "Credibility determinations, the weighing of the evidence,
12 and the drawing of legitimate inferences from the facts are jury
13 functions, not those of a judge . . . ruling on a motion for
14 summary judgment . . . ." <u>Id.</u>

15         The Copyright Act preempts "all legal or equitable
16 rights that are equivalent to any of the exclusive rights within
17 the general scope of copyright." 17 U.S.C. § 301(a).  Preemption
18 of state law claims occurs when: (1) the work at issue comes
19 within the subject matter of the Copyright Act; <u>and</u> (2) the
20 rights granted under state law are equivalent to those protected
21 by the Act.  <u>See id.</u>; <u>Kodadek v. MTV Networks, Inc.</u>, 152 F.3d
22 1209, 1212 (9th Cir. 1998); <u>Valente-Kritzer Video v. Pinckney</u>,
23 881 F.2d 772, 776 (9th Cir. 1989); <u>Del Madera Prop. v. Rhodes &</u>
24 <u>Gardner, Inc.</u>, 820 F.2d 973, 976 (9th Cir. 1987), <u>overruled on</u>
25 <u>other grounds by</u> <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994).
26 If either of these prongs is not satisfied, the state law claim
27 is not preempted.  17 U.S.C. § 301(a).

28         The first prong of the test is satisfied whenever the

1  work at issue comes within the subject matter of copyright as

2  defined by 17 U.S.C. §§ 102 and 103.  The "subject matter" of

3  copyright includes "original works of authorship fixed in any

4  tangible medium of expression."  <u>Id.</u> § 102(a).  It does not

5  extend to "any idea, procedure, process, system, method of

6  operation, concept, principle, or discovery, regardless of the

7  form in which it is described, explained, illustrated, or

8  embodied in such work."  <u>Id.</u> § 102(b).

9         Computer programs are entitled to copyright protection

10  as "literary works."  17 U.S.C. § 102(a); <u>Firoozye v. Earthlink</u>

11  <u>Network</u>, 153 F. Supp. 2d 1115, 1124-25 (N.D. Cal. 2001).

12  Protection under the Copyright Act extends to both "literal" and

13  "non-literal" components of computer software.  <u>Johnson Controls,</u>

14  <u>Inc. v. Phoenix Control Sys., Inc.</u>, 886 F.2d 1173, 1175 (9th Cir.

15  1989).  Literal components include source codes and object codes

16  and non-literal components include the software's structure,

17  organization, and user interface.  <u>Id.</u>  However, elements of

18  computer programs which constitute ideas, processes, or methods

19  of operation are not protected by copyright law.  <u>Apple Computer,</u>

20  <u>Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1444 (9th Cir. 1994).

21  Whether a particular component of a computer program is protected

22  by a copyright depends on whether it qualifies as an "expression"

23  of an idea rather than the idea itself.  <u>Harper & Row Publishers,</u>

24  <u>Inc. v. Nation Enters.</u>, 471 U.S. 539, 547 (1985); <u>see</u> <u>Johnson</u>,

25  886 F.2d at 1175.

26         Plaintiff describes its trade secrets as including the

27  CRiis source code as well as the confidential means of accessing

28  the servers housing plaintiff's software package, the CRiis data

9

schema, data files, methods, processes, and functionalities. (Thomas Decl. Ex. A.)  While the CRiis source code falls under the "subject matter" of the Copyright Act, plaintiff's other alleged trade secrets are not within the subject matter of copyright law, so any claim involving those components cannot be preempted.[6]

The second prong of the preemption test is satisfied whenever the rights protected by state law are equivalent to those protected by the Copyright Act.  In order to avoid preemption, "the state cause of action must protect rights which are qualitatively different from the copyright rights," Del Madera Props., 820 F.2d at 977, and the "state claim must have an

_____

[6]  Preemption analysis merely asks whether the state law right as alleged falls "within the subject matter of copyright," not whether it states a viable claim under the state law.  17 U.S.C. § 301(a).  Thus, the court does not decide the merits of plaintiff's misappropriation claim involving the alleged trade secrets.  See Downing v. Abercrombie & Fitch, 265 F.3d 994, 1004 (9th Cir. 2001) (holding that the plaintiffs' misappropriation claim was not preempted by the Copyright Act by looking to whether the claim fell within subject matter of copyright, rather than whether the evidence was sufficient for a misappropriation claim); Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc., No. C-01-20813, 2007 WL 2429653, at *9 (N.D. Cal. Aug. 24, 2007) (considering allegations, not evidence, to find on summary judgment that state law claims were not preempted).

An analysis of whether plaintiff could succeed on a trade secret claim is thus unnecessary at this stage.  Indeed, Aptitude emphasized at oral argument that the instant motion only dealt with preemption and not with the merits of any of plaintiff's claims.  However, the court notes Aptitude's repeated citation to Silvaco Data Systems v. Intel Corp., 184 Cal. App. 4th 210 (6th Dist. 2010).  That case found that "features, functions, and characteristics of the design and operation of [plaintiff's] software products" did not constitute trade secrets because the plaintiff did not keep them secret.  Id. at 221-22. Here, plaintiff argues that it protects as secrets not only its source code but also the finished product and processes, so Silvaco might not be controlling when the merits of the trade secret claim are considered.

1  extra element which changes the nature of the action." <u>Id.</u>

2  (internal quotation marks omitted).  A court "should not rely

3  merely on a laundry list of the alleged elements of the state law

4  claims at issue, such that the mere <u>possibility</u> of an extra

5  element protects a claim from preemption." <u>Idema v. Dreamworks,</u>

6  <u>Inc.</u>, 162 F. Supp. 2d 1129, 1190 (C.D. Cal. 2001) (internal

7  quotation marks omitted).  Rather, the court must "engage in a

8  fact-specific inquiry into the <u>actual</u> allegations underlying the

9  claims at issue in the case, so as to determine whether the

10  gravamen of the state law claim asserted is the same as the

11  rights protected by the Copyright Act." <u>Id.</u>  The court considers

12  whether the state law claims <u>as asserted</u> are equivalent to a

13  federal copyright claim.  <u>Id.</u>

14      "The rights protected under the Copyright Act include

15  the rights of reproduction, preparation of derivative works,

16  distribution, and display." <u>Altera Corp. v. Clear Logic, Inc.</u>,

17  424 F.3d 1079, 1089 (9th Cir. 2005) (citing 17 U.S.C. § 106).  In

18  contrast, "[a]ctions for disclosure and exploitation of trade

19  secrets require a status of secrecy not required for copyright

20  and hence, are not pre-empted.  This conclusion follows whether

21  or not the material subject to the trade secret is itself

22  copyrightable."  1 Nimmer on Copyright § 1.01[B][1][h], at 1-53

23  (2010).  Under California law, information must derive its

24  economic value "from not being generally known to the public or

25  to other persons who can obtain economic value from its

26  disclosure or use" and must be "the subject of efforts that are

27  reasonable under the circumstances to maintain its secrecy" to

28  qualify for trade secret protection.  Cal. Civ. Code § 3426.1(d).

1        Plaintiff's misappropriation of trade secrets claim

2   contains an extra element--that CRiis and the surrounding ideas

3   and processes qualify as trade <u>secrets</u> under section 3426.1--that

4   makes the claim qualitatively different from a copyright

5   infringement action.  <u>See</u> <u>Trandes Corp. v. Guy F. Atkinson Co.</u>,

6   996 F.2d 655, 660 (4th Cir. 1993) ("We agree with the Second

7   Circuit that the breach of a duty of trust or confidentiality

8   comprises the core of actions for trade secret misappropriation,

9   and 'supplies the extra element that qualitatively distinguishes

10  such trade secret causes of action from claims for copyright

11  infringement that are based solely upon copying.'" (quoting

12  <u>Computer Assocs. Int'l, Inc. v. Altai, Inc.</u>, 982 F.2d 693, 717

13  (2d Cir. 1992))); <u>S.O.S., Inc. v. Payday, Inc.</u>, 886 F.2d 1081,

14  1090 n.13 (9th Cir. 1989) ("Since the California statute pleaded

15  in this case [section 3426.1] does not involve a legal or

16  equitable right equivalent to an exclusive right of a copyright

17  owner under the Copyright Act, but only prohibits certain means

18  of obtaining confidential information, its application here would

19  not conflict with federal copyright law."); <u>see also</u> <u>Firoozye</u>,

20  153 F. Supp. 2d at 1130-31 (Copyright Act does not preempt CUTSA

21  claim because that claim contained an extra element, namely, that

22  plaintiff's computer program qualified as a trade secret).

23       Accordingly, the court finds that plaintiff's claim for

24  misappropriation of trade secrets is not preempted by its

25  copyright infringement claim.

26  ///

27  ///

28  ///

1         IT IS THEREFORE ORDERED that Aptitude's motion for

2   partial summary judgment be, and the same hereby is, DENIED.

3   DATED: April 11, 2011

4

5   _____

6   WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13