1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11
   ATPAC, INC., a California            NO. CIV. 2:10-294 WBS JFM
12 corporation,

13          Plaintiff,                  MEMORANDUM AND ORDER RE:
                                        PLAINTIFF'S MOTION FOR
14      v.                              TERMINATING SANCTIONS AND
                                        DEFENDANTS' MOTION FOR
15 APTITUDE SOLUTIONS, INC., a          APPOINTMENT OF SPECIAL MASTER
   Florida corporation, COUNTY OF       AND STAY
16 NEVADA, a California County,
   and GREGORY J. DIAZ, an
17 individual,

18          Defendants.
   _____/
19

20                         ----oo0oo----

21
           Plaintiff AtPac, Inc., filed this action against
22
   defendants Aptitude Solutions, Inc. ("Aptitude"), County of
23
   Nevada, and Gregory J. Diaz, alleging breach of contract,
24
   misappropriation of trade secrets under the California Uniform
25
   Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426-3426.11, and
26

27

28

                                  1

copyright infringement.[1]  Plaintiff now moves for terminating sanctions against defendants, and defendants move for appointment of a special master and a stay of the non-copyright claims.

I.   Evidentiary Objections

The parties have filed numerous evidentiary objections. "While the Federal Rules of Evidence do not necessarily apply in the context of a motion for sanctions, evidence relied upon must, at a minimum, bear indicia of reliability." Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co., 559 F.3d 888, 901 (8th Cir. 2009); see Jensen v. Phillips Screw Co., 546 F.3d 59, 66 n.5 (1st Cir. 2008).  Similarly, evidentiary objections are inappropriate on a motion to stay.  See Network Appliance Inc. v. Sun Microsys. Inc., No. C-07-06053, 2008 WL 2168917, at *6 (N.D. Cal. May 23, 2008) (taking evidentiary objections into account in assessing the weight of the evidence and disregarding any legal argument or conclusions, but overruling objections on motion to stay).  The court can find no cases in which evidentiary objections were made on a motion for appointment of a special master, but it is clear in comparing this type of motion to other pretrial, non-dispositive motions that evidence need not be submitted in a form that would be admissible at trial.

The court is satisfied that the evidence upon which it relies[2] bears indicia of reliability, and thus the parties'

---

[1]   Plaintiff's fourth claim, under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, was dismissed by the court on August 4, 2010.  (Docket No. 30.)

[2]   To the extent that the parties' evidentiary objections are actually arguments about the relevance of evidence or the weight the court should give to the evidence, the court has

1  objections are overruled.

2  II.  <u>Factual and Procedural Background</u>

3        Plaintiff provides software and consulting services
4  related to county clerk-recorder information imaging systems.
5  (First Am. Compl. ("FAC") ¶ 3 (Docket No. 22).)  These systems
6  are computer-based and designed to, <u>inter alia</u>, electronically
7  receive, store, and organize information that is within the
8  purview of a county clerk-recorder and store images of relevant
9  documents associated with this information.  (<u>Id.</u>)  Plaintiff's
10  clerk-recorder imaging information software is distributed under
11  the mark "CRiis."  (<u>Id.</u>)  In 1999, plaintiff entered into a
12  License Agreement with County of Nevada for the CRiis software
13  and related products and services.  (<u>Id.</u> ¶ 12.)  The License
14  Agreement was amended between 2001 and 2006, the most recent of
15  which extended the term of the License Agreement until June 30,
16  2010.  (<u>Id.</u> ¶ 13.)

17        The License Agreement allegedly provides, <u>inter alia</u>,
18  that plaintiff retains title to the software, that the software
19  constitutes a trade secret and that County of Nevada will not
20  release or disclose the software to third parties (<u>id.</u> ¶ 14),
21  that County of Nevada will notify AtPac immediately of any known
22  or suspected unauthorized use or access of the software (<u>id.</u> ¶
23  16), and that all documents provided to County of Nevada may not
24  be reproduced by County of Nevada (<u>id.</u> ¶ 17).  In 1999, pursuant

25

26  considered those arguments.  To the extent that statements in
   declarations are based on speculation, improper legal
27  conclusions, or argument, those statements are not facts and the
   court does not consider them as such.  <u>See</u> <u>Burch v. Regents of</u>
28  <u>Univ. of Cal.</u>, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

to the License Agreement, plaintiff installed the CRiis software on a dedicated AtPac-maintained server, called ER-Recorder, which was housed with County of Nevada. (Id. ¶ 24.)  The parties agreed that plaintiff would be the exclusive system administrator of the ER-Recorder server.  (Id.)

In November of 2008, County of Nevada began discussions with Aptitude to replace plaintiff as the County's clerk-recorder software provider.  (Id. ¶ 28.)  Diaz, the Clerk-Recorder of County of Nevada, allegedly rejected plaintiff's offer to help the County extract the data from plaintiff's files and convert it into a form usable by Aptitude.  (Id. ¶¶ 32-33.)  Diaz allegedly represented in a January 8, 2009, letter that County of Nevada would extract the data from the CRiis files on its own, and that County of Nevada would not provide AtPac's trade secret information to Aptitude or save the trade secret and proprietary information.  (Id. ¶¶ 33-34.)

Plaintiff alleges that County of Nevada did not perform the data extraction itself and that it instead provided Aptitude with plaintiff's trade secret and copyright-protected information.  (Id. ¶ 39.)  In November of 2008, Aptitude provided County of Nevada with the "AS-Nevada" server to give Aptitude access to County of Nevada's data through a remote connection. (McGrath Decl. in Supp. of Defs.' Opp'n ¶¶ 6-8 (Docket No. 144); Dion Decl. in Supp. of Defs.' Opp'n ¶ 2.)  Plaintiff contends that on November 4, 2008, two Aptitude employees used a computer logged in simultaneously to the ER-Recorder server and Aptitude's AS-Nevada server, and that the employees transferred files from the ER-Recorder server to the AS-Nevada server.  (Mem. of P. & A.

in Supp. of Pl.'s Mot. at 5:12-26 (Docket No. 137).)  Plaintiff also contends that Aptitude was able to log in to the AS-Nevada server after that day and remotely connect to the ER-Recorder server.  (Id. at 7:2-6.)

A.   Facts Relevant to Defendants' Motion for Appointment of Special Master and Stay

On August 10, 2010, defendants requested to examine the ER-Recorder server, and on October 15, 2010, County of Nevada propounded discovery requests calling for the production of the allegedly infringed aspects of CRiis.  (Abu-Assal Decl. in Supp. of Defs.' Mot. ¶¶ 2, 3, Ex. B.)  On December 10, 2010, the magistrate judge entered a protective order governing the pretrial handling of documents.  (Protective Order (Docket No. 70).)  The Order required that CRiis be inspected at plaintiff's counsel's office and that Aptitude's software, OnCore, be inspected where the source code is maintained or another mutually agreed-upon location.  (Id. at 12:13-26.)  Soon thereafter, each party proposed a protocol for reviewing the source codes, which involved some combination of independent reviews and side-by-side comparisons.  (Muller Decl. in Supp. of Defs.' Mot. ¶¶ 2-5, Exs. I, J.)  As of the filing of the instant motion on February 17, 2011, the parties had not yet agreed on a protocol.  (Id. ¶ 16.)  However, defendants were able to begin an inspection of CRiis between March 2 and 4, but could not finish the inspection because defendants' expert did not have the right equipment.  (Thomas Decl. in Supp. of Pl.'s Mot. ¶¶ 3-6; Menz Decl. in Supp. of Pl.'s Mot. ¶¶ 6-7.)

B.   Facts Relevant to Plaintiff's Motion for Terminating

5

1        <u>Sanctions</u>

2        In May and June of 2009, before the instant action had

3   commenced, plaintiff requested access to both servers in order to

4   "ensure all AtPac software, and CRiis databases, ha[d] been

5   deleted." (Barale Decl. in Supp. of Defs.' Opp'n ¶ 2, Exs. C,

6   D.) County of Nevada conveyed the request to Aptitude, which

7   confirmed on August 16, 2009, that all data files transferred

8   from the ER-Recorder server had been deleted from the AS-Nevada

9   server. (<u>Id.</u> ¶ 3; McGrath Decl. ¶ 11, Ex. E; Cox Decl. in Supp.

10  of Defs.' Opp'n ¶ 12.) In a September 11, 2009, letter to County

11  of Nevada's counsel, plaintiff acknowledged that the files had

12  been deleted:

13          [Y]ou have represented that the County has deleted all of
            the <u>CRiis</u>™ program data from the "Aptitude FTP" site,
14          that the County has provided no information belonging to
            AtPac other than certain ".dat files" to Aptitude, that
15          the County has no intention of providing any additional
            data from the <u>CRiis</u>™ system to Aptitude, and that the
16          County has received assurances from Aptitude that this
            information was used solely for extraction purposes and
17          has since been deleted.

18  (McLeran Decl. in Supp. of Defs.' Opp'n ¶ 5, Ex. G.) The letter,

19  which proposed a possible resolution of the dispute, went on to

20  ask for a statement under oath including "confirmation that any

21  and all copies of AtPac's information, including <u>CRiis</u>™ program

22  files and data, have been permanently deleted from both the

23  County's server and from Aptitude's computer systems, including

24  all back-up systems (including all tape backups) . . . ." (<u>Id.</u>)

25      On September 23, 2009, plaintiff filed a government

26  tort claim against the County of Nevada, which addressed

27  defendants' wrongful access to and extraction of data from the

28

1  ER-Recorder server.[3]  (Pl.'s Req. for Judicial Notice in Supp. of

2  Mot. Ex. A (Docket No. 118).)  On October 20, 2009, counsel for

3  plaintiff instructed defendants' counsel in writing that

4  defendants were obligated to "maintain all copies of data (both

5  in hard copy and electronic form) relevant to this dispute."

6  (Thomas Decl. ¶ 17, Ex. P.)  On February 3, 2010, plaintiff filed

7  its initial complaint against defendants.

8           In December of 2009, as part of the virtualization of

9  their physical servers, County of Nevada requested of Aptitude

10 that the AS-Nevada server "be cleaned up and all unnecessary

11 files and configurations removed."  (Thomas Decl. ¶¶ 8, 13, Exs.

12 G, L.)  Defendants then removed all but the files Aptitude "may

13 need in the future to help with support."  (Id. ¶¶ 8, 14, Exs. G,

14 M.)  At that time, any CRiis data had already been deleted from

15 the server.

16          On February 19, 2010, soon after the filing of the

17 complaint, the Deputy Counsel for County of Nevada issued a

18 litigation hold notice to the affected employees, instructing

19 recipients to "preserve all records, correspondence, written

20 material, electronically stored material, or other information

21

22          [3]    Plaintiff asks the court to take judicial notice of its
   government tort claim filed on September 23, 2009, and the letter
23 from the County of Nevada Board of Supervisors denying that
   claim.  (Docket No. 118.)  The court may take judicial notice of
24 facts "not subject to reasonable dispute" because they are either
   "(1) generally known within the territorial jurisdiction of the
25 trial court or (2) capable of accurate and ready determination by
   resort to sources whose accuracy cannot reasonably be
26 questioned," Fed. R. Evid. 201, which includes "matters of public
   record."  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir.
27 2001).  Both of these documents are matters of public record
   whose authenticity is not disputed, and the court will take
28 judicial notice of them.

7

related to the County's involvement with AtPac, Inc. and Aptitude
Solutions, regardless of form" and to "inform any members of
[their] staff who might be in possession of such relevant
evidence to not discard or destroy any records relating to this
prosecution." (McLeran Decl. ¶ 7, Ex. H.)

        Also on February 19, 2010, Kathy Barale, an Information
System Analyst for County of Nevada, and Alana Wittig, a Project
Manager for Aptitude, began to discuss scrubbing the AS-Nevada
server in preparation for returning it to Aptitude. (Thomas
Decl. ¶¶ 8, 15, Exs. G, N.) Defendants contend that the server
was scrubbed because County of Nevada's servers were being
virtualized and thus the County did not need to retain the
physical server. (Monaghan Decl. in Supp. of Defs.' Opp'n ¶ 4.)
County of Nevada was required by law to remove public data from
the server before returning it to Aptitude. (Id. ¶ 9.) Despite
County of Nevada's Deputy Counsel's litigation hold, staff did
not believe that the hold precluded them from scrubbing the
server because the data had already been deleted and the contents
of the server as it then existed were saved on the virtual
server. (Id. ¶ 10; Barale Decl. ¶¶ 5-8.) The AS-Nevada server
was placed in queue to be wiped on March 22, 2010 (Monaghan Decl.
¶ 9, Ex. J), but because of the backlog of servers to be wiped,
the task was reassigned and eventually completed in the middle of
October of 2010, but was not reported as completed until November
10, 2010. (Paredes Decl. in Supp. of Defs.' Opp'n ¶ 2.)

        Plaintiff believes that had the server not been
scrubbed, it would have been possible for a forensic examination
to determine what information from the ER-Recorder server had

8

1  been transferred to the AS-Nevada server.  (Menz Decl. in Supp.

2  of Pl.'s Mot. ¶¶ 4-5.)  However, defendants contend that the AS-

3  Nevada server was not configured with the capability or software

4  to track if and when particular files were transferred to or from

5  the server, so forensic examination might not have been effective

6  even before the server was scrubbed.  (Dion Decl. ¶¶ 3-4.)

7  　　　　Plaintiff complains of several other alleged discovery

8  abuses by defendants: defendants (1) failed to identify the AS-

9  Nevada server as the device corresponding to an IP address known

10  to have accessed the ER-Recorder server; (2) failed to produce

11  any documents related to the spoliation of the AS-Nevada server

12  until after the scrubbing took place, making it impossible for

13  plaintiff to prevent the scrubbing; (3) failed to produce

14  documents relating to Placer County, another county in which

15  Aptitude was engaged in converting from plaintiff's software to

16  its own; and (4) failed to produce handwritten notes until the

17  day before a hearing on plaintiff's motion to compel production.

18  (Defs.' Mot. at 14:9-17:8.)

19  　　　　Defendants respond by stating that (1) plaintiff never

20  asked for them to identify the IP address (Opp'n at 20:20-24,

21  38:11-14); (2) defendants produced documents related to the

22  scrubbing on or before the date by which they were required to

23  produce such documents (id. at 21:1-5, 38:15-18); (3) Aptitude's

24  in-house counsel mistakenly believed that all documents relating

25  to Placer County had already been collected (id. at 22:12-23:10,

26  37:1-17); and (4) defendants immediately produced the handwritten

27  notes after discovering that they were inadvertently omitted,

28  conduct for which it has already been sanctioned (id. at 38:19-

9

1  25; Dec. 10, 2010, Order (Docket No. 71)).

2      Plaintiff has previously brought two successful motions

3  to compel, one of which resulted in monetary sanctions against

4  defendants. (Docket Nos. 42, 56, 71.)  Two other discovery

5  disputes are currently pending before the magistrate judge.

6  (Docket Nos. 75, 90.)

7  III. <u>Discussion</u>

8      A.  <u>Appointment of a Special Master and Stay</u>

9      Defendants ask the court to appoint a special master to

10  (1) determine the terms of the protocol for the
   examination of the County's servers and the side-by-side
11  examination of the <u>CRiis</u> and OnCore source code and
   related software based on the special master's expertise
12  in the field and from the proposals made by the parties,
   (2) supervise the examination of the servers and the
13  comparison of <u>CRiis</u> and OnCore along with the parties and
   their consultants, and (3) make a Report and
14  Recommendation to the Court as to findings of fact with
   regard to forensic examination of the servers, whether
15  the <u>CRiis</u> and OnCore source code are substantially
   similar, whether the <u>CRiis</u> GUIs and data files contain
16  the requisite level of creative expression to warrant
   protection under the Copyright Act, and whether any
17  substantial similarity exists with respect to any other
   protectable portions of the <u>CRiis</u> and OnCore programs.

18

19  (Defs.' Mot. at 2:11-22 (Docket No. 91).)

20      A court may appoint a special master only to:

21  (A) perform duties consented to by the parties;
   (B) hold trial proceedings and make or recommend findings
22  of fact on issues to be decided without a jury if
   appointment is warranted by:
23      (i) some exceptional condition; or
       (ii) the need to perform an accounting or resolve a
24  difficult computation of damages; or
   (C) address pretrial and posttrial matters that cannot be
25  effectively and timely addressed by an available district
   judge or magistrate judge of the district.

26

27  Fed. R. Civ. P. 53(a)(1).  Plaintiff has not consented to the

28  appointment of a special master.  Defendants' request for the

10

1   special master to determine a protocol and supervise the
2   examination appears to be brought under Rule 53(a)(1)(C)
3   regarding pretrial matters, and their request that the special
4   master recommend findings of fact appears to be based on Rule
5   53(a)(1)(B)(i), which relates to trial proceedings when an
6   exceptional condition applies.

7         The impetus for defendants' request for a special
8   master, particularly the first two tasks they wish the special
9   master to perform, appears to be their sense that an impasse has
10  been reached in agreeing on a protocol for examining the parties'
11  source codes.  Since the filing of the instant motion, the
12  parties have apparently begun the process of examining the CRiis
13  software.  This demonstrates to the court that extraordinary
14  interference in the form of appointing a special master is
15  unnecessary.  Defendants have not shown, for example, that the
16  parties are unable to determine the terms of a protocol or that
17  they require supervision to examine the software.  To the extent
18  that the parties cannot agree, defendants have not shown that
19  such matters cannot be effectively and timely addressed by the
20  court.[4]  See Fed. R. Civ. P. 53(a)(1)(C).  If necessary, the
21  parties may request that the magistrate judge alter the
22  protective order to deal with new conflicts, but a special master
23  is not necessary nor would one be effective for that purpose.
24  The protective order is already in place and defendants have not
25  shown that it is insufficient to protect the parties' interests.

26  _____

27        [4]   To the extent defendants' motion is based on
    plaintiff's failure to cooperate in discovery to date, it bears
28  noting that plaintiff will presumably require review of the
    software's source codes in order to establish some of its claims.

1        Furthermore, plaintiff has requested a jury trial.  A
2   special master cannot decide questions reserved for the jury.
3   Fed. R. Civ. P. 53(a)(1)(B).  While it is possible that the
4   copyright claim could be decided on summary judgment, the court
5   declines to appoint a special master solely to make it easier for
6   defendants to bring a summary judgment motion.  Although the
7   ultimate determination of whether defendants infringed on
8   plaintiff's copyright may require technical expertise beyond the
9   competency of a layperson or this court, the parties may present
10  their experts' opinions, which is the ordinary procedure in cases
11  involving technical or specialized knowledge beyond the
12  competency of a layperson or the court.  See Fed. R. Evid. 702.
13  If at a later date the appointment of a special master becomes
14  necessary, defendants may renew their motion.

15       Defendants have also moved to stay the non-copyright
16  claims pending a motion for summary judgment on the copyright
17  claim that they intend to file at a later date.  The court has
18  the power to stay proceedings "incidental to the power inherent
19  in every court to control the disposition of the causes on its
20  docket with economy of time and effort for itself, for counsel,
21  and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254
22  (1936).  Given that the copyright and non-copyright claims are
23  grounded at least in part in the same set of facts, a stay would
24  be a waste of time and resources and might result in duplicative
25  discovery.  Accordingly, the court will deny the motion to stay.

26       B.   Terminating Sanctions

27       District courts may impose sanctions as part of their
28  inherent power "to manage their own affairs so as to achieve the

orderly and expeditious disposition of cases."[5]  <u>Link v. Wabash</u>
<u>R.R. Co.</u>, 370 U.S. 626, 630-31 (1962); <u>see also</u> <u>Unigard Sec. Ins.</u>
<u>Co. v. Lakewood Eng'g & Mfg. Corp.</u>, 982 F.2d 363, 368 (9th Cir.
1992) (excluding evidence as a sanction for spoliation); <u>In re</u>
<u>Napster, Inc. Copyright Litig.</u>, 462 F. Supp. 2d 1060, 1066 (N.D.
Cal. 2006).  This power includes the "'broad discretion to make .
. . evidentiary rulings conducive to the conduct of a fair and
orderly trial.'"  <u>Unigard</u>, 982 F.2d at 368 (quoting <u>Campbell</u>
<u>Indus. v. M/V Gemini</u>, 619 F.2d 24, 27 (9th Cir. 1980)).

A district court's inherent power to sanction may be
invoked in response to spoliation of evidence.  Spoliation occurs
when a party destroys evidence after receiving some notice that
the evidence was potentially relevant to litigation.  <u>United</u>
<u>States v. Kitsap Physicians Serv.</u>, 314 F.3d 995, 1001 (9th Cir.
2002).  If a party breaches its duty to preserve evidence, the
opposing party may move to sanction the party that destroyed
evidence.  <u>See</u> <u>Unigard</u>, 982 F.2d at 365.

Courts may sanction parties responsible for spoliation
of evidence in three ways.  First, a court can instruct the jury
that it may draw an adverse inference against the party or
witness responsible for destroying the evidence.  <u>See</u> <u>Glover v.</u>
<u>BIC Corp.</u>, 6 F.3d 1318, 1329 (9th Cir. 1993); <u>Akiona v. United</u>

---

[5]  A court may also impose sanctions pursuant to Federal
Rule of Civil Procedure 37 for failure to comply with a court
order or disclose, supplement, or admit discovery responses.
Fed. R. Civ. P. 37(b), (c).  The tests for Rule 37 sanctions and
"inherent power" sanctions are "subject to much the same
considerations," <u>Halaco Eng'g Co. v. Costle</u>, 843 F.2d 376, 380
(9th Cir. 1988), but they are not identical.  <u>In re Napster, Inc.</u>
<u>Copyright Litig.</u>, 462 F. Supp. 2d 1060, 1075 n.4 (N.D. Cal.
2006).

States, 938 F.2d 158, 161 (9th Cir. 1991).  Second, a court can exclude witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence.  See Glover, 6 F.3d at 1329; Unigard, 982 F.2d at 368-69.  Finally, a court may enter default judgment against the party responsible for destroying the evidence.  See Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc., 682 F.2d 802, 806 (9th Cir. 1982) (court may enter default judgment when sanctionable conduct is related to the merits of the controversy); Columbia Pictures, Inc. v. Bunnell, No. 2:06-cv-01093, 2007 WL 4877701, at *5 (C.D. Cal. Dec. 13, 2007); cf. In re Exxon Valdez, 102 F.3d 429, 432 (9th Cir. 1996) (a court may dismiss claims brought by the party responsible for discovery abuses).

       A party's destruction of evidence need not be in "bad faith" to warrant a court's imposition of sanctions.  Glover, 6 F.3d at 1329; Unigard, 982 F.2d at 368 n.2.  District courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation.  See Glover, 6 F.3d at 1329; Akiona, 938 F.2d at 161; cf. Unigard, 982 F.2d at 368 n.2 (sanctions may be imposed for "willfulness or fault by the offending party").  However, a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed.  Baliotis v. McNeil, 870 F. Supp. 1285, 1291 (M.D. Pa. 1994); see also Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994) (courts should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim").

       When considering a default sanction in response to

14

spoliation of evidence, the court must determine "(1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, [and] (4) the relationship or nexus between the misconduct drawing the dismissal [or default] sanction and the matters in controversy in the case . . . ." Halaco Eng'g Co. v. Costle, 843 F.2d 376, 380 (9th Cir. 1988).  In addition, the court may consider the prejudice to the party victim as an "optional" consideration where appropriate.  Id.  This multi-factor test is not "a mechanical means of determining what discovery sanction is just," but rather "a way for a district judge to think about what to do."  Valley Eng'rs Inc. v. Elec. Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998).

        "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."  In re Napster, 462 F. Supp. 2d at 1067.  "The obligation to retain discoverable materials is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials."  Nat'l Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987).  "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."  In re Napster, 462 F. Supp. 2d at 1070 (citing Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

15

1    Plaintiff contends that defendants' deletion of the

2    relevant files from the AS-Nevada server and the subsequent

3    scrubbing of the server constitute spoliation of evidence because

4    defendants were on notice in September of 2009, when the

5    government tort claim was filed, that defendants' extraction of

6    data from the ER-Recorder server was relevant.  Plaintiff's

7    counsel also told defendants in October of 2009 to retain

8    relevant evidence.  At the latest, the filing of this action in

9    February of 2010 was certainly sufficient to put defendants on

10   notice of their obligation to retain evidence.

11   Plaintiff asked defendants to <u>delete</u> all CRiis-related

12   data from their servers when the parties were in settlement

13   discussions and before any claim or lawsuit was filed; defendants

14   cannot be at fault for deleting the files at that time.  However,

15   by the time defendants <u>scrubbed</u> the server, the instant case had

16   been filed and they were on notice of their obligation to retain

17   evidence.  Thus, the court will consider whether sanctions are

18   appropriate in response to defendants' scrubbing of the server,

19   but not their deletion of the files from the server.

20            1.   <u>Extraordinary Circumstances</u>

21   In the Ninth Circuit, "extraordinary circumstances

22   exist where there is a pattern of disregard for Court orders and

23   deceptive litigation tactics that threaten to interfere with the

24   rightful decision of a case."  <u>See</u> <u>Advantacare Health Partners,</u>

25   <u>LP v. Access IV</u>, No. C 03-04496, 2004 WL 1837997 at *5 (N.D. Cal.

26   Aug. 17, 2004) (citing <u>Valley Eng'rs</u>, 158 F.3d at 1057-58); <u>see</u>

27   <u>also</u> <u>Anheuser-Busch, Inc. v. Natural Beverage Distribs.</u>, 69 F.3d

28   337, 348 (9th Cir. 1995) ("It is well settled that dismissal is

16

1   warranted where . . . a party has engaged deliberately in
2   deceptive practices that undermine the integrity of judicial
3   proceedings . . . .”); Wyle v. R.J. Reynolds Indus., Inc., 709
4   F.2d 585, 591 (9th Cir. 1983) (upholding dismissal where the
5   district court determined that “the deliberate deception and
6   irreparable loss of material evidence justified the sanction of
7   dismissal”); Wm. T. Thompson Co. v. Gen. Nutrition Corp., 593 F.
8   Supp. 1443, 1456 (C.D. Cal. 1984) (holding that default and
9   dismissal were proper sanctions in view of party’s “willful
10  destruction of documents and records that deprived [the opposing
11  party] of the opportunity to present critical evidence on its key
12  claims to the jury”).

13          Plaintiff has pointed to a litany of alleged discovery
14  abuses by defendants, one of which subjected defendants to
15  monetary sanctions.  (Docket Nos. 56, 71.)  Two other discovery
16  disputes are currently pending before the magistrate judge.
17  (Docket Nos. 75, 90.)  Defendants have proffered explanations for
18  their actions, essentially arguing that their failures to comply
19  with discovery requests and orders were the result of
20  incompetence or confusion rather than deliberate deception.
21  Plaintiff, on the other hand, argues that the sheer volume of the
22  discovery problems suggests deliberateness, a point that is well-
23  taken.

24          The court is not in a position on this motion to make
25  findings that each of the alleged discovery abuses was
26  sanctionable.  See Freeman v. Allstate Life Ins. Co., 253 F.3d
27  533, 537 (9th Cir. 2001) (upholding district court judge’s
28  decision not to sanction because of moving party’s “fail[ure] to

17

1  prosecute the issue before the magistrate judge as required by"
2  the Eastern District's Local Rules and the court's order); <u>see</u>
3  <u>also</u> Local R. 302(c)(1) (prescribing that "[a]ll discovery
4  motions, including Fed. R. Civ. P. 37 motions" are to be heard by
5  a magistrate judge).  However, the court considers the previous
6  orders by the magistrate judge, and the continuing difficulties
7  the parties are apparently having in conducting discovery
8  properly, as evidence pointing to "extreme circumstances."

9        2.   <u>Willfulness, Bad Faith, or Fault</u>

10       "For dismissal [or default judgment] to be proper, the
11  conduct to be sanctioned must be due to willfulness, fault, or
12  bad faith."  <u>Anheuser-Busch</u>, 69 F.3d at 348 (internal quotation
13  marks omitted).  Defendants argue that the scrubbing was simply
14  due to a misunderstanding of the scope of the discovery hold, as
15  the AS-Nevada server was merely one of eighty-two servers that
16  County of Nevada virtualized in an effort to increase efficiency
17  and decrease costs.  (Monaghan Decl. ¶¶ 4, 8.)  Files that were
18  on the server when it was virtualized were preserved and saved on
19  County of Nevada's virtual server, (<u>id.</u> ¶ 10), and defendants
20  claim that the server was scrubbed as protocol before returning
21  it to Aptitude.

22       Even if an individual employee for County of Nevada or
23  Aptitude may have misunderstood that the litigation hold applied
24  to the AS-Nevada server, which the court doubts for reasons
25  discussed below, defendants cannot escape responsibility by
26  arguing that no willfulness, bad faith, or fault was involved.
27  High-level employees for both defendants must have known that the
28  AS-Nevada server was extremely relevant to the litigation, and it

18

was their responsibility to see that the server was preserved.
See In re Napster, 462 F. Supp. 2d at 1070 ("Once a party
reasonably anticipates litigation, it must suspend its routine
document retention/destruction policy and put in place a
'litigation hold' to ensure the preservation of relevant
documents." (citing Zubulake v. UBS Warburg LLC, 220 F.R.D. 212,
220 (S.D.N.Y. 2003)); Nat'l Ass'n of Radiation Survivors, 115
F.R.D. at 557-58 ("The obligation to retain discoverable
materials . . . requires that the agency or corporate officers
having notice of discovery obligations communicate those
obligations to employees in possession of discoverable
materials."). The circumstances surrounding the scrubbing
indicate that either the high-level employees failed in their
duty to explain the extent of the litigation hold or that the
employees responsible for the scrubbing acted in bad faith.

Counsel for County of Nevada sent an e-mail to inform
the relevant employees of the litigation hold, instructing them
to preserve all information related to the County's involvement
with AtPac and Aptitude. Later that very day, Kathy Barale, the
Information System Analyst for County of Nevada and one of the
recipients of the e-mail regarding the litigation hold, began
discussing scrubbing the AS-Nevada server with Alana Wittig, a
Project Manager for Aptitude. Even if the timing was
coincidental and not itself evidence of bad faith, the employees
should have at least investigated the issue before irrevocably
damaging potentially relevant evidence. There is no indication
that Barale, Wittig, or anyone else at County of Nevada or
Aptitude even attempted to ensure that the scrubbing would comply

1  with their obligation to retain potentially relevant evidence.

2      While many other servers were virtualized and

3  presumably scrubbed by County of Nevada, only the AS-Nevada

4  server was owned by Aptitude, stored at County of Nevada, and

5  used for making the transfer from AtPac's software to Aptitude's

6  software.  Its relevance to the dispute involving AtPac and

7  Aptitude, and the need for treating it differently than other

8  servers, was clear.  The fact that all evidence relating to the

9  scrubbing was concealed from plaintiff until after it took place

10 is further indication that defendants knew the scrubbing was not

11 appropriate.  Scrubbing the server despite its potential

12 relevance demonstrates willful ignorance or worse, not an

13 innocent misunderstanding.

14      3.  <u>Efficacy of Lesser Sanctions</u>

15     Imposition of a default judgment sanction is

16 appropriate where "(1) no lesser sanction would adequately punish

17 [defendants] and deter other parties from engaging in the same

18 conduct or (2) [defendants] ha[ve] engaged in deceptive conduct

19 and will continue to do so." <u>In re Napster</u>, 462 F. Supp. 2d at

20 1074.  Plaintiff argues that no lesser sanction would be

21 appropriate because defendants must be prevented from engaging in

22 further discovery abuses.  However, at the hearing, plaintiff

23 conceded that an adverse inference jury instruction sanction

24 would be an eye-opener to defendants and could deter future

25 abuses while also punishing defendants for the spoliation.  For

26 the reasons set forth below, the court concludes that the lesser

27 sanction of a jury instruction would be adequate.  Therefore,

28 this factor weighs against default sanctions.

1                    4.   <u>Nexus between Misconduct and Matters in</u>
2                         <u>Controversy</u>

3              In order for default sanctions to be imposed for
4    defendants' scrubbing of the AS-Nevada server, there must be a
5    nexus between defendants' conduct and the merits such that the
6    conduct interferes with the rightful decision of the action.
7    <u>Halaco</u>, 843 F.2d at 381.  In the context of spoliation of
8    evidence, a nexus exists if the party destroyed documents that
9    were relevant to discovery requests.   <u>See</u> <u>Anheuser-Busch</u>, 69 F.3d
10   at 351; <u>Advantacare</u>, 2004 WL 1837997, at *6-7.  Spoliation of
11   evidence raises a presumption that the destroyed evidence goes to
12   the merits of the case and that such evidence was adverse to the
13   party that destroyed it.  <u>Phoceene Sous-Marine</u>, 682 F.2d at 806;
14   <u>Nat'l Ass'n of Radiation Survivors</u>, 115 F.R.D. at 557.
15   Plaintiff's claims are based in part on the allegation that
16   defendants copied copyrighted and trade secret information from
17   the ER-Recorder server to the AS-Nevada server.  Assuming the
18   evidence was adverse to defendants, if the AS-Nevada server had
19   not been scrubbed, plaintiff could have proven that the relevant
20   information was copied to the AS-Nevada server.  Thus, a nexus
21   exists between the spoliation of the AS-Nevada server and the
22   merits of the action.

23                    5.  <u>Prejudice</u>

24             The existence and degree of prejudice to the wronged
25   party is an "optional" consideration when determining whether
26   default sanctions are appropriate.  <u>Halaco</u>, 843 F.2d at 382.  As
27   the nexus between spoliation and the merits indicates, a critical
28   portion of plaintiff's case may have been spoiled by the

1  scrubbing.

2        Defendants argue that no actual prejudice will result,
3  contending that even before having scrubbed the server it would
4  have been impossible to determine what files were transferred to
5  the server and when, because any relevant files were already
6  deleted and the server was not configured to log such activities.
7  However, the fact that a server did not log activities does not
8  preclude the possibility of a forensic examination uncovering
9  deleted files.  As the party at fault for scrubbing the server,
10 defendants bear the consequences of this uncertainty.  See Nat'l
11 Ass'n of Radiation Survivors, 115 F.R.D. at 557 (holding that
12 where "the relevance of and resulting prejudice from destruction
13 of documents cannot be clearly ascertained because the documents
14 no longer exist . . . [the culpable party] can hardly assert any
15 presumption of irrelevance as to the destroyed documents"
16 (quoting Alexander v. Nat'l Farmers Org., 687 F.2d 1173, 1205
17 (8th Cir. 1982))) (alteration in original); see also Computer
18 Assocs. Int'l, Inc. v. Am. Fundware, Inc., 133 F.R.D. 166, 170
19 (D. Colo. 1990).

20        Defendants also point out that there may be other
21 sources for the same evidence, such as examining the ER-Recorder
22 server, which might shed light on what files were transferred
23 from it to the AS-Nevada server, or the virtualized server
24 containing all the files from the AS-Nevada server before it was
25 scrubbed.  Plaintiff responds that the virtualized server would
26 only contain files that existed on the AS-Nevada server, not the
27 traces of previously-deleted files that might have been
28 discovered on the physical server.

1    Finally, defendants argue that evidence might be

2    retrievable from the AS-Nevada server even after the scrubbing.

3    This is highly unlikely given the complexity of the scrubbing

4    performed; furthermore, if any evidence was retrievable from the

5    AS-Nevada server, defendants would be in violation of the court's

6    discovery orders for failing to produce such evidence.

7    Defendants scrubbed a server that they had a duty to

8    preserve and produce to plaintiff.  The server was related to the

9    merits of the action, and plaintiff has almost certainly been

10   prejudiced by its destruction.  The spoliation, combined with

11   other deceptive discovery practices by defendants, indicates that

12   without some sort of sanction, a fair and just resolution of the

13   action will be impossible.

14          6.   <u>Evidentiary Sanctions</u>

15          "[A] party seeking an adverse inference instruction

16   based on the destruction of evidence must establish (1) that the

17   party having control over the evidence had an obligation to

18   preserve it at the time it was destroyed; (2) that the records

19   were destroyed with a culpable state of mind; and (3) that the

20   destroyed evidence was relevant to the party's claim or defense

21   such that a reasonable trier of fact could find that it would

22   support that claim or defense."  <u>In re Napster, Inc. Copyright</u>

23   <u>Litig.</u>, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006) (quoting

24   <u>Hamilton v. Signature Flight Support Corp.</u>, No. C 05-0490, 2005

25   WL 3481423, at *3 (N.D. Cal. Dec. 20, 2005)).

26          As discussed above, defendants had an obligation to

27   preserve the AS-Nevada server at the time it was destroyed, and

28   they willfully destroyed it.  In addition, information on the

23

server was relevant to the action.  By instructing the jury that it may infer the truth of what plaintiff might have been able to prove, under the best case scenario, if the evidence had not been destroyed, the court believes it can cure any prejudice resulting from defendants' spoliation of the evidence.  Therefore, the court will instruct the jury to the effect that it may infer that any files on the ER-Recorder server were transferred to the AS-Nevada server.  The precise wording of the instruction will be determined at trial.

IT IS THEREFORE ORDERED that defendants' motion for appointment of a special master and stay be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for terminating sanctions or, in the alternative, issue sanctions, be, and the same hereby is, DENIED to the extent plaintiff seeks default sanctions and GRANTED to the extent plaintiff seeks an adverse inference jury instruction.

DATED:  April 12, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

24